# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CARMIE COLLEY,

    **Plaintiff,**

vs.                                                                    No. CIV. 99-994 JP/LFG

**SANDIA CORPORATION d/b/a**
**SANDIA NATIONAL LABORATORIES,**
**and UNUM Life Insurance Company of**
**America, and Agent of Sandia National Lab,**

    **Defendants,**

## MEMORANDUM OPINION AND ORDER

On December 15, 1999 Defendants served on Plaintiff a Motion to Dismiss or in the Alternative for Summary Judgment (Doc. No. 13). That motion will be considered as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and will be granted.

I.    Background

The allegations of the first amended complaint reveal the following: Plaintiff worked for Defendant Sandia Corporation d/b/a Sandia National Laboratories ("Sandia"). On January 14, 1994 Plaintiff was injured. (The cause and the nature of the injuries she suffered that day are not described.) On July 12, 1995 Sandia's doctors found Plaintiff to be totally disabled. Sandia then permanently terminated Plaintiff's employment. Plaintiff did not contest her termination and indeed consented to it, based on alleged representations that she would obtain long term disability benefits under Sandia's long term disability plan ("plan"), which Defendant UNUM administers. Plaintiff subsequently applied for disability benefits and her application was denied. Plaintiff then filed an action in state court, bringing claims for breach of contract, "trade practices and fraud,"

misrepresentation, and unfair claims practices.  See Notice of Removal, Ex. A.  Defendants removed the case on the ground that ERISA preempted all claims because the factual basis underlying each was a denial of disability benefits.  Plaintiff did not contest removal and instead amended her complaint to allege the following counts with the following headings:

> Count I - wrongful denial of disability benefits
> Count II - fraud, breach of contract, and estoppel
> Count III - placing plaintiff in dangerous work environment
> Count IV - trade practices and fraud
> Count V - unfair claims practices

(See First Am. Compl.)  Defendants move to dismiss all counts, or in the alternative, move for summary judgment as to all counts.  Plaintiff responds by requesting leave to amend, to which Defendants reply that amendment would be futile except to name the plan as Defendant to a claim under ERISA section 502(a)(1)(B).

II.     Standard

In considering a motion under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim, the court must liberally construe the pleadings, accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  See Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).  The issue before a court considering a motion to dismiss is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).   A complaint may be dismissed only if it appears to a certainty that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

III.    ERISA

Defendants move to dismiss counts II, IV, and V as preempted by ERISA.[1]  Nowhere in her amended complaint does Plaintiff mention ERISA or even cite to any federal statute.  Plaintiff in her response concedes preemption of counts II, IV, and V but argues that she should be allowed once again to amend on the ground that her state law claims will "convert" to federal claims where ERISA preempts the state claims.  (See Pl's Memo. at 5 (citing Carland v. Metropolitan Life Ins. Co., 935 F.2d 1114, 1119 (10th Cir. 1991) (finding claim for wrongful denial of insurance benefits, removed to federal court on ERISA preemption grounds, was "converted" to ERISA claim for which plaintiff was entitled to summary judgment)).)  Plaintiff asks permission to frame claims under 29 U.S.C. §§ 1132[2], 1140, and 1141 (sections 502, 510, and 511 of ERISA).[3]

Counts I, II, IV, and V will be dismissed and Plaintiff will be allowed to file another amended complaint in a manner consistent with the guidelines described below.

   A.    Section 510

---

[1] Defendants also move to dismiss count I on preemption grounds but concede that if Plaintiff is attempting to assert a claim under ERISA in count I, then it is not dismissable on preemption grounds.  (See Def's Mem. in Supp. at 3 n. 2.)  Count I may state a claim under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (authorizing action for recovery of plan benefits), and the analysis in this Memorandum Opinion and Order will proceed on that assumption.

[2] Plaintiff makes only passing mention of ERISA section 502 and does not identify under which of the many subsections a section 502 claim might arise.  I will not hazard a guess at what sort of claim Plaintiff thinks she can state other than to presume, as observed in note 1 supra, that Plaintiff attempts in count I to make a claim under section 502(a)(1)(B) and would do so explicitly if granted leave to amend.

[3] To the extent Plaintiff asks the court to "convert" claims for her, that request will be denied.

3

The first sentence of section 510 makes it unlawful to discharge a plan participant for exercising her rights under ERISA <u>or</u> for the purpose of interfering with the attainment of any ERISA rights to which the participant may become entitled. <u>See</u> 29 U.S.C. § 1140. Plaintiff claims that Defendants violated section 510 when she was discharged in a manner calculated to cause her to lose her benefits under the plan. Defendants argue that Plaintiff's right to apply for benefits was not impaired so no section 510 violation occurred.

While Defendants' argument may be correct as to the first part of the initial sentence of section 510, the second component of that sentence suggests that the "right" protected from interference by employer discharge is not merely the right to apply for benefits but rather the right to receive them. At this stage it is impossible to determine just what facts in this case, with allegations of discharge and denial of benefits, might support a section 510 claim. But in the absence of specific allegations of fact under a section 510 cause of action, it would be improper to proclaim that no set of facts would support such a claim.

On the other hand, it is clear that certain sets of facts will not support a claim under section 510 of ERISA. As Defendants correctly point out, the mere denial of a claim for benefits does not give rise to a section 510 claim. <u>See</u> <u>Custer v. Pan American Life Ins. Co.</u>, 12 F.3d 410, 422 (4th Cir. 1993). Thus, to the extent Plaintiff seeks to contest Defendant UNUM's decision denying benefits, section 510 provides no refuge. As Defendants further note accurately, an employer's oral promises also cannot form the basis for a section 510 claim. <u>See</u> 29 U.S.C.§ 1102 (a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument."). <u>See also</u> <u>Alexander v. Anheuser-Busch Co.</u>, 990 F.2d 536, 539 (10th Cir. 1993) (finding that oral or written misrepresentations from an employer cannot expand scope of

4

ERISA-covered plan benefits).

Plaintiff will therefore be permitted to file an amended complaint stating a cause of action under section 510, but only on the following conditions: First, counsel for Plaintiff must carefully review the rather vast body of section 510 law and assess whether the facts of this case will support a claim under that statute. Next, counsel must read Federal Rule of Civil Procedure 11. If counsel then believes he may properly file an amended complaint with a section 510 claim, he may do so, but only in a manner consistent with the entirety of this Memorandum Opinion and Order.

B. Section 511

Plaintiff will not be permitted to frame a claim under section 511. Section 511 is a criminal provision not subject to civil enforcement or an implied right of action. See Brownstein v. Hewlett Packard, NO. CIV. A. 95-2459 and 96-3600, 1997 WL 134898, at *4 (E.D. Pa. Mar. 18, 1997).

C. Section 502(a)(1)(B)

Defendants argue that even if Plaintiff has properly articulated a claim under section 502(a)(1)(B), she has not named the correct defendant--the plan. Defendants' position is that an action for denial of benefits may only be brought against an entity who has 1) the authority to make claims decisions and 2) the responsibility to pay the claim. Defendants assert that Defendant Sandia is only responsible for claims payment and that Defendant UNUM is only charged with making claims decisions. Plaintiff's position is that the text of ERISA fails to support Defendants and that "common sense observation of the hundreds of ERISA cases" indicates that Defendants may be sued. (See Pl's Memo. at 5.)

Section 502(d)(1) states that, "An employee benefit plan may sue or be sued under this subchapter as an entity." See 29 U.S.C. § 1132(d)(1). Subsection (d)(2) adds that a money judgment under the same subchapter is only enforceable against the plan "as an entity . . . unless liability against such person is established in his individual capacity under this subchapter." Id. § 1132(d)(2). Case law from the Tenth Circuit Court of Appeals construing to whom liability flows from these statutes is virtually non-existent. Further, no one decision from any court directly supports Defendants' two-part position that a defendant in a section 502(a)(1)(B) case must exercise administrative claims discretion and must also be responsible for claims payment. However, the argument Defendants craft from a body of cases is plausible. In light of Plaintiff's cursory and unpersuasive response, Defendants' views on who should be a party to a section 502(a)(1)(B) claim will be adopted.

First, the plan is a necessary defendant. Roeder v. Chemrex, Inc., 863 F. Supp. 817 (E.D. Wis. 1994) is the only decision cited in which a court in an ERISA benefits recovery case has squarely addressed a non-plan defendant's argument that the plaintiff failed to name the plan as a party. In that case the court held that section 502(d)(2), with its provision that a money judgment would only be enforceable against the plan, led to the conclusion that in a denial of benefits suit the failure to join the plan as a necessary party defendant constituted grounds for judgment in the non-plan defendant's favor. See id. at 828. See also Hemphill v. Unisys Corp., 855 F. Supp. 1225, 1234 (D. Utah 1994) (finding the plaintiff "should amend his complaint to assure that he has stated an ERISA claim" to bring plan, as "proper" party, before the court).[4] Plaintiff is

---

[4] The Hemphill court's finding that the plan must be named in the interest of affording relief suggests that the plan was really a necessary defendant, rather than merely a proper one. See James Wm. Moore et al., Moore's Federal Practice and Procedure ¶ 19.02[2] (3rd ed. 1999).

6

correct that numerous decisions in which a plaintiff sought review of an administrative denial of benefits have proceeded without the plan as a defendant. See, e.g., UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358 (1999); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987); Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186 (11th Cir. 1997). However, those decisions do not address the issue raised by Defendants and are thus of limited value for present purposes.

The comprehensible portion of Plaintiff's statutory argument is little more persuasive and does not rebut Defendants' position. Plaintiff appears to argue that Defendants' position substitutes the permissive word "may" in section 502(d)(1), with the word "must." Plaintiff may also be arguing that the use of "may" in section 502(d)(1) is not in harmony with the indication in section 502(d)(2) that a money judgment against a plan is only enforceable against a plan unless personal liability for another party is established. Neither of these positions is accurate. The plain language of these two subdivisions of section 502(d) suggests that there exist causes of action under ERISA, other than those, as in this case, for a recovery of claimed plan benefits, where the plan may or may not sue or be sued. As just one example, section 502(a)(1)(A) authorizes a cause of action for an administrator's refusal to supply requested plan information. In such case the administrator is personally liable. See 29 U.S.C. § 1132(c)(1). The plan may not be involved at all. The proper conclusion is simply that when a plaintiff seeks against a plan a money judgment, which is enforceable only against the plan, that plan must be before the court and is a necessary party. This position does not create disharmony within the statute.

Second, Defendant UNUM is not a proper party to a suit under ERISA to recover disability benefits. Many decisions state that the only inquiry should be whether the defendant

7

exercises administrative discretion over the plan. See, e.g., Garren, 114 F.3d at 3. And certainly Defendant UNUM does exercise such control for claims purposes. See Kaushal v. UNUM Life Ins. Co. of America, No. 98-752 WWD/LFG, slip op. at 6 (D.N.M. Sept. 27, 1999) (finding "as a matter of law" that UNUM had sole discretion to determine disability and plan eligibility in case which present Defendants represent involved the same UNUM plan as sponsored by Sandia).[5] The only apparent reason for naming UNUM as a Defendant is its position as the decision-making plan administrator. But even though Defendant UNUM is the decision-making plan administrator, that does not mean it should be liable in its individual capacity if the evidence proves that its claims decision was arbitrary and capricious.

The analyses in the only decisions to thoroughly examine why such an entity should be a party points to finding Defendant UNUM should not be an individually named defendant in a suit under section 502(a)(1)(B). In Roeder, the court found an employer and the company who issued the long term disability policy at issue (coincidentally, UNUM) were not entities against whom the court could render a judgment in a denial of benefits challenged under ERISA. See Roeder, 863 F. Supp. at 828. In reaching this conclusion, the court in Roeder relied on the statement in section 502(d)(2) that any money judgment against a plan is only enforceable against that plan.

---

[5] I will fully adopt Judge Deaton's analysis of UNUM's role with respect to the plan at issue. I will also adopt Judge Deaton's determination that an arbitrary and capricious standard of review applies to a section 502(a)(1)(B) claim under the same Sandia/UNUM plan. See Kaushal, slip op. at 4-6. (See also Pl's Memo. at 3 (claiming Defendant UNUM arbitrarily and capriciously processed Plaintiff's file).) Accordingly, only the administrative record will be reviewed. See Kaushal, slip op. at 8. The provisional discovery plan filed on October 18, 1999 reflects that Plaintiff should already have this record. Her request for more discovery is therefore denied.

Additionally, I note that while the analysis in Kaushal was to determine the proper standard of review and did not disturb UNUM's (or Sandia's) position as a defendant in that case, nothing in the Kaushal opinion indicates that the issue presented here was raised in Kaushal.

8

See id. (finding also that declaratory judgment would be, in effect, a money judgment payable from the plan). In Pecor v. Northwestern Nat'l Ins. Co., 896 F. Supp. 651 (E.D. Wis. 1994), the court performed a similar analysis, although without specific reference to section 502(d)(2). The court concluded that suit under section 502(a)(1)(B) was appropriate only against those who could be found responsible for the payment of a judgment. See Pecor 869 F. Supp. at 653 (finding the plan and its insurer to be proper defendants).[6]

The court in Pecor also dismissed the employer even though it was the plan administrator. As mentioned, many other cases have proceeded on the notion that the exercise of administrative control is the only factor relevant for determining who is amenable to suit. It appears that in no case other than Pecor and possibly Roeder, has a court reconciled its position with section 502(d) and explained why an entity other than the plan should be responsible for a judgment or how acting a plan administrator makes one liable in an individual capacity. See, e.g., Garren 114 F.3d at 187 (dismissing case because employer/administrator not named as a defendant); Rosen v. TRW, 979 F.2d 191, 192 (11th Cir. 1992) (finding personal liability for plan administrator in suit to compel benefits payment, without explanation or citation); Everhart v. Allmerica Fin. Life Ins. Co., NO. C-99-0733-VRW, 1999 WL 498244 (N.D.Cal., Jul. 9, 1999) (noting that an exercise of discretion would make one a fiduciary and thus subject to suit for a recovery of benefits).[7]

---

[6] The insurance company defendant in Pecor (who was not the administrator) remained a party to the suit because, as the insurer, its assets were apparently used to pay plan claims. See Pecor, 869 F. Supp. at 653. In contrast, Defendant UNUM does not insure (or fund) the plan at issue in this case. See Kaushal at 2, 6-7.

[7] Plaintiff cites to three cases, none of which is helpful. In UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358 (1999) and Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), the Court did not even address whether UNUM and Pilot were proper defendants. In Varity Corp. v. Howe, 516 U.S. 489, 509 (1996) the Court held that a fiduciary is subject to suit for

9

What Pecor illustrates well (and what may account for the numerous section 502(a)(1)(B) cases proceeding against the administrator solely on the basis of administrative discretion) is that the capacity in which an administrator is involved in a suit like this turns largely on a distinction without a significant difference. It is Defendant UNUM's decision that will ultimately be reviewed and Defendant UNUM will still be subject to this court's jurisdiction and judgments with respect to its denial of Plaintiff's long term disability benefits--but only because Defendant UNUM acted as plan administrator when denying long term disability benefits to Plaintiff. "When [the administrator] acts in its capacity as plan administrator, it steps into the shoes of the [p]lan and is subject to any court orders restraining or directing the [p]lan's actions." See Pecor 869 F. Supp. at 653 n. 2. Any judgment in favor of Plaintiff, however, could not have the effect of ordering payment directly from Defendant UNUM because it is not the plan and it is not individually liable. See 29 U.S.C. § 1132(d)(2).[8]

Plaintiff's argument that Defendant UNUM (and Sandia) are fiduciaries is irrelevant to the extent she attempts to name them personally liable for a section 502(a)(1)(B) suit. The only case she cites in support, Mertens v. Hewitt Assocs., 508 U.S. 248 (1993), is not a denial of benefits case and is therefore not on point. No other case seems to have indicated with any clarity why a fiduciary should be a named defendant in a denial of benefits action under section 502(a)(1)(B),

---

relief under section 503(a)(3) and did not analyze the ERISA section at issue here, section 502(a)(1)(B)). No determination is made in this Memorandum Opinion and Order as to who might be a proper defendant in any cause of cause of action under any provision other than section 502(a)(1)(B).

[8] Congress has indicated some instances when administrators become personally liable. See, e.g., 29 U.S.C. § 1132(c)(1) (authorizing personal liability when administrator fails to notify). No provision of ERISA suggests personal administrator liability in a section 502(a)(1)(B) suit.

10

which does not provide a cause of action for breach of fiduciary duty or, for present purposes, anything other than a recovery of claimed benefits. Plaintiff has failed to counter Defendants' plausible arguments that Defendant UNUM is not a proper party to a suit under section 502(a)(1)(B).

Third, Defendant Sandia is also not a proper party. In <u>Kaushal</u>, Judge Deaton considered the role of Sandia and found that Sandia had no involvement in making disability determinations or benefits entitlement decisions under the long term disability plan. <u>See</u> <u>Kaushal</u>, slip op. at 6. Defendant Sandia thus does not even meet the initial requirement for being a defendant in an ERISA suit for a denial of benefits. <u>See, e.g.</u>, <u>Garren</u>, 114 F.3d at 187. Thus, I conclude, without reaching the question of claims payment, that Defendant Sandia is not a proper party.

In conclusion, Plaintiff will be allowed to amend to state explicitly a claim under ERISA section 502(a)(1)(B), with the plan as a defendant. Plaintiff will further be permitted to amend to state other causes of action under ERISA section 502, but only on the following conditions. First, counsel for Plaintiff must carefully review the vast and intricate body of section 502 law and assess whether the facts of this case will support a claim under portions of section 502 other than subdivision 502(a)(1)(B). Next, counsel must again read Federal Rule of Civil Procedure 11. If counsel then believes he may properly file an amended complaint with a claim under portions of section 502 other than subsection 502(a)(1)(B), he may do so, but only in a manner consistent with the entirety of this Memorandum Opinion and Order.

IV.    Count III

Count III of the amended complaint is a claim against Defendant Sandia (only) for placing Plaintiff in a dangerous work environment. Defendant Sandia argues that the exclusivity

11

provision of the New Mexico Workers' Compensation Act bars the action. See NMSA 1978, § 52-1-9 (1937). Defendant Sandia further argues that there are no allegations of an intentional tort which would bring the claim within an exception to the exclusivity provision. Plaintiff contends that count III states a claim within the exception to the exclusivity provision because there are allegations of intent.

In Johnson Controls World Svcs., Inc. v. Barnes, 115 N.M. 116, 847 P.2d 761 (Ct. App. 1993), the court discussed what allegations a complaint must contain to fall within the exception which Plaintiff attempts to invoke with respect to the exclusivity provision. The court said that two questions must be answered affirmatively in order for a plaintiff to state a claim. "First, did the employer intend to commit the alleged act? Second, do the circumstances support a reasonable inference that the employer directly intended to harm the worker?" Johnson Controls, 115 N.M. at 121, 847 P.2d at 766. In Johnson Controls the plaintiff, a heavy equipment operator employed by the defendant, stated in his complaint that his employer falsely told him that a tank which he was instructed to excavate had been drained of all hazardous liquid. See id. at 117, 847 P.2d at 762. The court accepted these allegations as true and found that they met part one. See id. at 121, 847 P.2d at 766 (not explaining what exactly "the alleged act" was). However, the plaintiff's complaint failed to meet part two. The plaintiff, in his complaint, alleged that he picked up a pipe with the equipment he was operating and that the pipe then struck the equipment and sprayed the plaintiff with hazardous liquid. See id. This factual allegation, the court found, did not support a reasonable inference that the employer intended to harm him. See id.

Plaintiff alleges that Defendant Sandia placed her in a work environment hazardous to her health "while knowing of Plaintiff's chronic and severe asthma." (First Am. Compl. at ¶ 19.)

12

Assuming, as did the court in Johnson Controls, that Plaintiff's complaint meets part one, she falls short at part two. Even if it is further assumed that Plaintiff suffered an injury such as an aggravation of her asthma (which is unclear because Plaintiff's complaint does not even allege that she was injured), there is simply insufficient indicia that Defendant Sandia intended this outcome when it placed her in an environment hazardous to her health. The only factors offered in the complaint from which a court could possibly infer the necessary intent are 1) that Defendant Sandia knew of Plaintiff's asthmatic condition, and 2) that Defendant Sandia violated its own rules in designating Plaintiff's working areas.[9] These circumstances could support various inferences of non-intentional infliction of harm and are an example of the sort of ambiguous, and thus unreasonable, inferences which the court in Johnson Controls rejected. See Johnson Controls, 115 N.M. at 119-20, 847 P.2d at 764 (citing with approval one case which noted that the "basis for [the] employer's liability outside the Act is *an actual intent to injure on the part of the employer*" (emphasis in original), another holding that an employer's knowledge that a plaintiff is engaged in dangerous work does not result in liability outside of New Mexico Workers' Compensation Act, and yet another case recognizing the Michigan Legislature's rejection of a "'substantial-certainty standard'" in similar situations) (citations omitted). Count III will therefore be dismissed.

---

[9] Plaintiff attaches to her brief her affidavit in which she generally asserts that Sandia acted with the requisite wrongful intent. The plaintiff in Johnson Controls did the same thing in response to a similar motion to dismiss or, in the alternative, for summary judgment. See Johnson Controls, 115 N.M. at 117-18, 847 P.2d at 762-63. The district court and the court of appeals both declined to consider the affidavit and treat Defendant's motion as a motion for summary judgment, choosing instead to limit their rulings to the motion to dismiss. See id. I will do the same and, as elsewhere in this Memorandum Opinion and Order, decide the motion as one to dismiss without consideration of affidavits.

V.  Conclusion

Counsel for Plaintiff has conceded that he filed an amended complaint on Plaintiff's behalf with an inadequate understanding of ERISA. I am aware of ERISA's complexity and will accordingly permit Plaintiff one final attempt at stating valid claims. If Plaintiff wishes to file another amended complaint, Plaintiff must do so only in a manner consistent with this Memorandum Opinion and Order, meaning Plaintiff may only bring the ERISA causes of action noted herein and may assert no new non-ERISA claims. If Plaintiff chooses to amend, she must file and serve her second amended complaint by not later than May 15, 2000. Between now and then counsel for Plaintiff has much legal research to conduct. A third complaint resembling the first two will not be met with similar accommodation.

IT IS THEREFORE ORDERED THAT Defendants Motion to Dismiss or in the Alternative for Summary Judgment (Doc. No. 13) is granted and that

(1) count II (fraud, breach of contract, and estoppel), count III (placing Plaintiff in dangerous work environment), count IV (trade practices and fraud), and count V (unfair claims practices) will be dismissed with prejudice;

(2) count I (wrongful denial of disability benefits), to the extent it alleges a cause of action under authority other than ERISA, will be dismissed with prejudice;

(3) any allegations under ERISA section 502(a)(1)(B), or any other portion of ERISA for which Plaintiff may have attempted to allege a cause of action, as discussed in this Memorandum Opinion and Order, are dismissed without prejudice; and

(4) Plaintiff is granted leave to amend, only in a manner consistent with this Memorandum Opinion and Order.

_____
**UNITED STATES DISTRICT JUDGE**