IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CARMIE COLLEY,**

    **Plaintiff,**

v.                                                                                           **No. CIV. 99-994 JP/LFG**

**SANDIA NATIONAL LABORATORIES**
**LONG TERM DISABILITY PLAN,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

On January 2, 2001 Defendant filed a motion for summary judgment (Doc. No. 36). That motion will be denied.

**I.    Background**

On January 14, 1994, while off the job but during a period in which Plaintiff worked at Sandia National Laboratories (Sandia), Plaintiff injured her left ankle. Plaintiff contends that pain in her ankle aggravated her asthma. She also claims to have suffered from sleep apnea during the relevant time period. In the spring of 1995, Plaintiff began to miss work because of her ankle and asthma conditions. Plaintiff's last day of work at Sandia was in late June or early July 1995. On October 18, 1995, under circumstances that are disputed but are also irrelevant to Plaintiff's ERISA section 502 claim, Sandia terminated Plaintiff.

In anticipation of her eligibility, Plaintiff had before her termination applied for long-term disability benefits with UNUM Life Insurance Company of America (UNUM), the third party administrator of Sandia's Long Term Disability Plan (Plan). On September 21, 1995 Dr. Albert Brown, who had been treating Plaintiff for her asthma, completed an Attending Physician's

Statement which was forwarded to UNUM. In it, Dr. Brown described Plaintiff's asthma as "chronic" and "intermittent." See UCOL-000204. He also checked a box indicating that Plaintiff had "Moderate limitation of functional capacity/capable of light work." Id. On September 26, 1995 Dr. Brian Altman, an orthopedist who treated Plaintiff's ankle, completed a Physical Capabilities Evaluation. In it, Dr. Altman indicated that Plaintiff could sit for four hours at a time, for eight hours total in a day and could stand for one half hour at a time, for three hours total in a day. See UCOL-000205. Neither doctor indicated what sort of examinations, procedures, or evaluations they had conducted, if any, or when they conducted them.

On October 19, 1995 UNUM asked each doctor to elaborate. Specifically, UNUM asked Drs. Altman and Brown whether Plaintiff would need any accommodations to perform her job which required 7.5 hours of sitting, .5 hours of walking, and occasional lifting of up to ten pounds. Dr. Brown responded by indicating that Plaintiff's left ankle "remains problematic and severe." UCOL-000168. Dr. Altman indicated that Plaintiff should elevate her leg "probably as much as possible while seated" and "ambulate as minimal [sic] as possible." UCOL-000169.

The Plan indicates that an employee qualifies for long term disability benefits when she "is prevented by [a] disability from engaging in any occupation or employment for which the individual is qualified based on training, education, or experience."[1] UCOL-000163. On November 8, 1995, UNUM applied that definition to the information provided by Drs. Altman and Brown, and denied Plaintiff's claim. UNUM found that Plaintiff could still perform the

---

[1] Plan documents elsewhere define one who qualifies for long term disability benefits as one who is "totally and permanently disabled." S-00020. "Total and permanent disability means that you are unable to perform the duties of your job or any other job suitable to your education, training, and experience. . . ." Id.

2

essential functions of her job which required sitting for 7.5 hours, walking for .5 hours, and occasional lifting of up to 10 lbs.  See UCOL-00163 to -64.  The denial letter also advised Plaintiff that she could support an appeal with "objective medical evidence" such as "statements from your [p]hysicians, results of testing, or physical medicine specialists reports outlining [the] extent, nature and courses of any surgeries and illness."  UCOL-000164.

On December 5, 1995 Dr. Altman wrote to UNUM indicating that Plaintiff "presents to me today stating that she has difficulty adhering to the capacities outlined by me on the [September 26, 1995] attending physician's physical capacity evaluation."  UCOL-000156.  He wrote that Plaintiff "reports" that she is unable to sit for more than one half hour at a time.  Id.  Dr. Altman then indicated that he wished to amend his September 26, 1995 statement to reflect that Plaintiff could sit for "probably" only two hours at time with the leg elevated and one half-hour with the leg dependant.  Id.  Dr. Altman further felt that a question on the September 26, 1995 Physical Capabilities Evaluation was unclear.  "[I]f this question is intended to mean how many hours in an eight hour day she is able to sit I would probably answer about four."  Id.  He also indicated that Plaintiff could walk for no more than one hour of an eight-hour work day.  Id.

On December 19, 1995 UNUM found that Dr. Altman's December 5,1995 letter was insufficient to reverse UNUM's November 8, 1995 denial.  Specifically, UNUM stated that Dr. Altman "failed to provide any objective medical documentation" to corroborate his view that Plaintiff could only sit for four hours in an eight hour day.  UCOL-000155.  UNUM then told Plaintiff that she could again appeal and support her appeal with "objective medical evidence" such as "statements from your [p]hysicians. . ."  Id.

A series of appeals and affirmations followed.  Some of the denial letters referred to

3

Sandia's willingness to accommodate Plaintiff. See, e.g., UCOL-000105. No one indicates what sort of accommodations, if any, were offered to Plaintiff before Sandia terminated her. At the January 12, 2001 pretrial conference Defendant also pointed out that the question of accommodation is not relevant once an employee has been terminated.

In other of the later denial letters, UNUM also invited Plaintiff to submit objective medical evidence to support an appeal. See, e.g., UCOL-000093. Plaintiff had previously authorized UNUM to request Plaintiff's Social Security file. See UCOL-000197 to -98. There is no indication that UNUM requested Plaintiff's Social Security file or that UNUM was required under the Plan to do so. There is also no indication that Plaintiff attempted on her own to procure her Social Security file to present it to UNUM.

On October 10, 1996, in a letter to UNUM, Dr. Altman reaffirmed his December 5, 1995 opinion and indicated that he had not seen Plaintiff since that time. See UCOL-000079. On October 31, 1996 Dr. Altman again wrote to UNUM, stating that "at the present time" Plaintiff cannot sit for more than one hour at a time with her leg elevated or for more than one half hour without elevating her leg. UCOL-000049. On December 15, 1996 Dr. Altman or Plaintiff apparently re-sent to UNUM Dr. Altman's October 31, 1996 letter, with the added conclusion that Plaintiff's condition "presented itself subsequent to her surgery in January 1995." UCOL-00071. The record does not reflect that Plaintiff ever provided any other medical evidence to support her appeals. The record also does not reflect that Plaintiff or Dr. Altman ever responded to any of several inquiries into why Dr. Altman on October 31, 1996 and/or on December 15, 1996 again revised his assessment of Plaintiff's capabilities.

Plaintiff eventually filed suit under 29 U.S.C. § 1132(a)(1)(B) and 1132(a)(3), parts of

4

ERISA section 502, to recover Plan benefits. In a Memorandum Opinion and Order filed on May 2, 2000, the court found that Plaintiff was entitled to a review of the administrative record under an "arbitrary and capricious" standard. Defendant now moves for summary judgment on the ground that UNUM's decision was not arbitrary and capricious because it was based on substantial, objective medical evidence.

**II.     Standard**

In a case such as this under section 502 of ERISA, in which the administrative record is reviewed under an "arbitrary and capricious" standard, the ultimate issue will be whether UNUM's decision was supported by "substantial evidence." See Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992). Substantial evidence is more than a scintilla but less than a preponderance. See id. The administrator's disposition need not be the only logical decision or even the best one. See Kimber v. Thiokol,196 F.3d 1092, 1098 (10th Cir. 1999). As long as the decision falls "somewhere on a continuum of reasonableness–even if on the low end," the decision should be upheld. Id.

At this stage, the issue is whether the record shows that no issues of material fact exist and that the moving party is entitled to judgment as a matter of law. See id. at 1097. When applying this standard, a court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted).

**III.    Analysis**

There may be substantial evidence to support many of the administrator's decisions in this case. For instance, prior to UNUM's November 8, 1995 decision, Plaintiff's own doctors

5

submitted evidence suggesting that Plaintiff was capable of light work, see UCOL-000204, and that Plaintiff could sit for four hours at a time, for eight hours total in a day and could stand for one half hour at a time, for three hours total in a day, see UCOL-000205.  Based on this evidence, even when viewed in a light most favorable to Plaintiff, UNUM's decision was quite reasonable.

The reasonableness of UNUM's next decision, denying Plaintiff's first appeal, is less clear, especially when the court views the relevant facts in a light most favorable to Plaintiff.  Dr. Altman concluded on December 5, 1995, after at least meeting with Plaintiff, that Plaintiff could sit for "probably" only two hours at a time with her leg elevated and that in an eight hour day Plaintiff could "probably" sit for "about" four hours.  See UCOL-000156.  UNUM had previously made Dr. Altman aware that Plaintiff's job required her to sit for 7.5 hours per day.  See UCOL-000172.

On December 19, 1995, UNUM denied Plaintiff's appeal on the ground that Dr. Altman's December 5, 1995 letter was not credible since it was not "objective."  When viewed in a light most favorable to Plaintiff, other portions of Defendant's December 19, 1995 letter belie Defendant's conclusion.  In the December 19, 1995 letter UNUM broadly describes "objective medical evidence" as "statements from your [p]hysicians."  UCOL-000155.  Dr. Altman's December 5, 1995 letter appears to fit this description.  Moreover, Dr. Altman's December 5, 1995 opinion appears to be the only of its kind that immediately followed a patient visit.  Neither Dr. Altman's September 26, 1995 Physical Capabilities Evaluation nor his October 23, 1993 letter--on which UNUM earlier relied to deny Plaintiff's claim--contain any indication that Dr. Altman based his conclusions in those documents on a physical exam or a test or some other type of "objective" evaluation.  In the administrative record there may be a legitimate reason, not yet

6

brought to the court's attention, for UNUM to have discounted Dr. Altman's December 5, 1995 letter and/or concluded that it did not support Plaintiff's claim.  However, when the facts from the administrative record which Defendant has so far called to the court's attention are viewed in a light most favorable to Plaintiff, as I must view them in considering a motion under Fed. R. Civ. P. 56, it was inappropriate for UNUM to have discounted Dr. Altman's December 5, 1995 letter or concluded that it did not support Plaintiff's claim.  Defendant's motion for summary judgment will therefore be denied.

As indicated in a Memorandum Opinion and Order filed on September 28, 2000 and again at the pretrial conference on January 12, 2001, Plaintiff's ERISA claim will be decided on the administrative record, which I understand is now complete and before the court.  The administrative record will be reviewed under an "arbitrary and capricious" standard for "substantial evidence" to support the administrator's decision.  That standard is quite different from the Fed. R. Civ. P. 56 standard under which I had to analyze Defendant's motion for summary judgment.  Therefore, I would like the parties to brief the question of whether "substantial evidence" exists for upholding the administrative decision.  The parties should pay particular attention to Dr. Altman's December 5, 1995 letter and point to all evidence in the record that would tend to support or undermine the Plan administrator's several decisions to deny Plaintiff's claims, especially the decisions to deny Plaintiff's first and subsequent appeals.  A briefing schedule will be established following a decision on Plaintiff's motion to amend her second amended complaint (Doc. No. 42).

IT IS THEREFORE ORDERED THAT Defendant's motion for summary judgment (Doc. No. 36) is denied.

*James A. Parker*

**CHIEF UNITED STATES DISTRICT JUDGE**